Lessee of ZEBACH and others *against* SMITH and another.

THIS was an ejectment for 330 acres of land, which was tried before the Chief Justice at *Sunbury* in *June* last.

The lessors of the plaintiff claimed as heirs at law of *Bartholomew Zebach.*

The defendants claimed under a sale by *George Wolf* one of the executors of *Zebach*; and the questions were 1. Whether *Wolf* had a right to sell. 2. Whether the sale was fair or fraudulent. 3. Whether the defendants could be affected by the fraud.

In relation to the *first* question, the evidence was that *Bartholomew Zebach*, by his will dated the 11th *December* 1775, appointed *George Wolf, Leonard Miller* and *Godfrey Rohrer*, his executors, whose authority over the land in dispute, depended upon the following clause:—" The executors, namely " *George Wolf, Leonard Miller* and *Godfrey Rohrer*, shall be " impowered to sell my land in *Shamokin*, on *Penn's* creek, " in the old purchase, and to give a good right. When my " debts are paid, if any thing should remain, my wife shall " keep two cows &c." *Miller* and *Rohrer* renounced on the 26th *December* 1775, and on the 15th *May* 1781, *Wolf* conveyed to *George* and *Philip Vanheada*, under whom the defendants claim, reciting a sale at public auction in pursuance of *Zebach's* will.

The evidence on the *second* point, was that one of the *Vanheadas* was the son-in-law of *Wolf*, that the land was sold for only 150*l.* continental money, equal to about 5*l.* specie,

*The testator appointed A, B and C, his executors, and gave them power to sell his land by the following clause—" The " executors, " namely, A, B " and C, shall " be impowered " to sell my land, " &c. and to " give a good " right. When " my debts are " paid, if any " thing should " remain, my " wife shall " keep, &c." Two of the executors refused to act.*

*Held that the third had authority to sell.*

1810.

Lessee of
ZEBACH
v.
SMITH.

and that there was personal property sufficient to discharge the testator's debts.

On the *third* point, there was no evidence but the recitals in the deed to the *Vanheadas;* and they related only to the source from which *Wolf* derived his power, the public auction, and the consideration of 150*l*, which was not stated to be continental.

The Chief Justice charged the jury, that in general a power given to three persons to sell, could not be executed by less than three. But there were exceptions. It had been agreed by the counsel on both sides, that if *Zebach* had authorized his executors to sell, without naming them in that part of the will where the power was given, *one* might sell, although the others renounced. This however, in sound reason, seemed the same as if he had named them; for there could be no doubt that if he had used the word executors alone, he must have had in his mind the persons whom in another part of his will he had named executors. It had also been agreed, that if this power of sale was connected with the *office* of executors, one might sell, if the others refused. Now the power to sell was by this will attached to the office of executors, because the testator had said, " *my executors*, namely *A, B, C,* &c. shall be impowered to sell," and immediately afterwards said, " *after my debts paid*," the remainder of his estate should be disposed of in a certain manner. The proceeds of sale were thus made liable to be administered by the executors in payment of debts, though the will did not say so expressly. It must have been the testator's meaning. It was the law of *Pennsylvania.* The case was stronger in this state in favour of a sale by one executor than in *England;* because in that country lands were not assets after they were sold, unless the will made them so; but *here* they were. The Chief Justice upon the whole inclined to the opinion that the executor in this case had a power to sell; but he said he should be well pleased, if on this point the opinion of the court in bank should be taken.

The *second* question his honour left to the jury; and on the *third* instructed them, that the defendants could not be affected by the fraud if any, because they were in the situation of purchasers for valuable consideration without notice.

1810.

Lessee of
ZEBACH
*v.*
SMITH.

The jury found for the defendants; and a motion for a new trial being overruled, the plaintiff appealed.

The case was argued in this court by *Watts* for the plaintiff, and by *Hall* and *Duncan* for the defendants.

For the plaintiff it was contended, upon the only material question, the first, that the power given by the will was a naked power, to the individuals named, which at common law could not be executed by less than the whole number, and which was not in any manner provided for by the statute of 21 *Hen.* 8. *c.* 4. Instead of the testator's having indicated by the names of the individuals the office they were to perform, as is sometimes done, he has indicated by the name of office the individuals to whom he chose to communicate the power; " My executors *namely A B, C D,* and *E F.*" That is, not my executors, however the number may be affected by death or renunciation, but my executors *nominatim*, shall have this power, and not any less number than the whole. The opinion that they take *virtute officii* in such a case, though countenanced by Mr. *Hargrave* in his edition of *Coke Littleton,* 113 *a. note* 2, is in opposition to the doctrine of *Lord Coke,* who seems to be supported by Mr. *Powell* in his treatise on devises, *p.* 302. They take a power *virtute officii,* which they are to execute in furtherance of their official duty; but if they are named by their proper names, says Mr. *Powell,* it annexes a personal authority, and appropriates the trust to them as private persons. *Pow. on Dev.* 307. It was with a view to such a case as the present that the legislature of this state passed the act of 12th *March* 1800. 4 *St. Laws* 593.

On the part of the defendants it was said, that Mr. *Hargrave's* argument, that where a power to sell was given to persons *nominatim* in the character of executors, it should be considered as annexed to the executors *ratione officii,* and so exercisable by the survivor, or by one if the others renounced, was intitled to great consideration, from the mere weight of his respectable name. But there was no necessity to rely upon it here, because it was clear from the manner in which the testator contemplated the proceeds of sale to go, and also from the direction the law of this state would give them, namely the payment of debts, that it was a power which

thy took *virtute officii.* The case of *Howell* v. *Barnes,* relied upon by Mr. *Powell,* is a clear authority for us, for he endeavours to take it out of the general rule asserted by Mr. *Hargrave,* by shewing that the persons named were to apply the produce of the sale *officially,* that is, as executors; and certainly the executors of *Zebach* were to do the same here. This appropriation of the proceeds has always been considered as obviating the objection of naked powers. *Swinb.* 406. 408. It gives in fact an interest to the executors, who are bound to pay the debts, if the requisite funds have been provided by the testator.

YEATES J. Three questions have been made upon the present will.

1st. The first, which was chiefly relied on, was, that *George Wolf,* the acting executor of the will of *Bartholomew Zebach,* had no power to sell the lands in question, under the terms of the will.

The will is very short, and so far as respects the point under consideration, is in the following words. " The *execu-* " *tors,* namely *George Wolf, Leonard Miller,* and *Godfrey* " *Rohrer,* shall be impowered to sell my land in *Shamokin* on " *Penn's* creek, in the old purchase, and to give a good right. " When my *debts* are paid, if any thing should remain, my " wife shall keep two cows &c."

It has been objected by the plaintiffs' counsel, that the executors had but a bare naked power to sell, without any interest, and the authority being given to them in the *plural* number, a single executor was not justified in making sale, under the plain expressions in the will. The opinion of *Powell* in his *Treatise on Devises, p.* 302, has been opposed to the note of *Hargrave* in his note (2) to *Co. Lit.* 113 *a,* and a preference given to the doctrine of the former. It has been further urged, that the act of assembly of 12th *March* 1800 was made with a view of amending the supposed defects in the law. This act is in some insances *remedial,* but in others merely *declaratory;* and it does not appear from the expressions used by the legislature, that it was intended to be remedial as to the point now to be decided. It seems unnecessary to determine in this case, whether the doctrine advoca-

ted by Mr. *Hargrave* or Mr. *Powell* is intitled to most res-pect; but I cannot avoid observing that the distinction con-tended for by Mr. *Powell* partakes of more refinement than solid reason. It is admitted on all hands, that if the autho-rity to sell was given to executors *virtute officii*, a surviving executor might sell; and an acting executor is put in the same state as a surviving executor, upon the renunciation of the other executors, by the words of the statute of 21 *H.* 8. *c.* 4. Now here the *executors* by their name of office are expressly impowered to sell; and it seems of little moment that they are afterwards named individually. The authority is given to them in their character of executors, and for the purpose of payment of debts, as appears by the succeeding clause in the will, an object which is highly favoured in law. I see no ground of either law or sound reason, which obliges the court to decide, that the sale made by *Wolf* was without authority.

2d. Fraud is imputed to *Wolf* in selling the land in *Octo-ber* 1779 to a son-in-law, for continental money, at a very inadequate price, when the country was almost depopulated, and no immediate necessity urged the sale. It would be un-reasonable to judge of the conduct of *Wolf* from subsequent events. Many people thought very differently of the bills of credit issued by the *United States* during the revolutionary war. *Æsop's* fable of the *Old Hound* reminds us of the injus-tice of censuring those, who placed confidence in the money emitted by congress. It was of essential service during the war with *Great Britain*, though we may deplore its effects on individual interests. Several witnesses have sworn to the fairness of the rule, and though the lands on *Penn's* creek have risen rapidly in price since, we ought not to condemn the conduct of *Wolf*, if it flowed from an honest, though uninformed and mistaken judgment.

3d. It has been further asserted, that *Smith* the present holder, is not intitled to the character of a *bona fide* purcha-ser without notice, he having had implied notice from the reci-tals in his deed, and having taken a covenant of general warran-ty. It is true, these recitals put him on inquiry respecting the facts set forth therein; but did not give him constructive notice of extrinsic facts, as that the land had been sold at an

1810.

Lessee of
ZEBACH
v.
SMITH.

inadequate price, by the acting executor to a son-in-law, for continental money, or that the affairs of the testator did not require such a sale. The question of fraud was fairly submitted to the jury under all the circumstances, who by their verdict have negatived the privity of the purchaser in the supposed fraud. The lessors of the plaintiff have acquiesced in the sale from *October* 1779 until *August* term 1801, when this suit was brought; and upon the whole I have no hesitation in saying that the judgment of the Circuit Court should be affirmed.

BRACKENRIDGE J. expressed his concurrence.

Judgment affirmed.