PHILO S. SHELTON vs. FITZHENRY HOMER & others.

Where a testator, by his will, authorizes his executors to sell and convey his real estate which is not specifically devised, at such times as they shall think proper, and such sale is not required for the purpose of effecting any other provisions of the will, the executors have a mere naked power to sell, not coupled with a trust.

Where a testator by his will gives a naked power to his executors, or such of them as shall take upon themselves the probate of his will, to sell and convey his real estate, and appoints two executors, who accept the trust and cause the will to be proved, and one of them afterwards resigns his trust, as executor, and is discharged therefrom by a decree of the probate court, the other executor has no authority, by the will, to sell and convey the testator's real estate: But if he has such authority, yet if he makes a contract for the sale of such estate to the executor who has resigned, he being one of the testator's heirs and devisees, and also, by the testator's will, trustee for other heirs and devisees, the court will not enforce specific performance of the contract; contracts, by which a trustee becomes the purchaser of the trust estate, being contrary to the policy of the law.

BILL in equity for the specific performance of a contract.

The bill alleged, that Benjamin P. Homer, in April 1838, died seized of divers messuages, lands and tenements, most of which were specifically devised by his last will : That in and by said will, the testator authorized and empowered his executors, or such of them as should take upon themselves the probate of said will, to sell and convey, and to execute good and sufficient deed or deeds to convey, all or any of the real estate of said testator, except such as was in said will specifically devised, either by public auction or private contract, at the discre-ion of said executors, for the best price they could obtain, and at such times as they might think proper : That the plaintiff, and Fitzhenry Homer, one of the defendants, were appointed executors of said will, and caused the same to be duly proved and allowed, and took upon themselves the execution thereof · That said Fitzhenry, on the 16th of June 1838, resigned his office

and trust as such executor, and was, upon his own petition, dis-- charged from said office, and all the powers and duties thereof, by a decree of the court of probate : That said testator, at the time of executing his will, and at the time of his death, was seized in fee of a mansion house and its appurtenances, situate in Boston, which were not specifically devised by his will : That the plaintiff was desirous of selling said premises, under and pursuant to the power contained in said will, and on the 18th of June 1838, he and the said Fitzhenry, with the concurrence of the sisters of said Fitzhenry, entered into and signed a memorandum of agreement, viz. that as soon as certain questions, which had arisen upon the proper construction of said will, could be determined,* said Fitzhenry would execute and perform the contract and agreement which he had made for the purchase of said mansion house and its appurtenances, and would pay for the same the sum of $ 50,000, to the satisfaction of the plaintiff: That Thomas Dixon, together with his wife, Mary Dixon, in her right, and also Georgiana A. Shelton, wife of the plaintiff— the said Mary and Georgiana, with said Fitzhenry, being the heirs at law of said testator, and the parties in interest under his will — executed said agreement, with said Fitzhenry, assenting to and approving the contract of sale thereby made of said premises.

The bill then alleged, that the said questions arising on the construction of said will had been determined,* and that the plaintiff was ready to perform his part of said agreement, and had tendered to said Fitzhenry a good and sufficient deed of said premises, and had offered to deliver the same, upon receiving payment as agreed ; but that said Fitzhenry — alleging that he is and always has been ready and willing to perform the said agreement on his part, if the plaintiff could have made, or can make, a good and valid title to said premises — denies that the plaintiff is empowered by said will to sell and convey said premises, so that he can make a good title to the same, and has refused, and still refuses, to receive said deed and pay to the plaintiff said sum of $ 50,000.

---

* See *Homer* v. *Shelton*, 2 Met. 194.

The plaintiff therefore prayed that said Fitzhenry might be compelled, by the decree of the court, to perform said agreement and to pay to the plaintiff said purchase money and interest. The plaintiff also prayed, if it should appear to the court that said Fitzhenry is not bound to accept the deed aforesaid, that then the plaintiff might have such further or other relief as the nature and circumstances of his case might require ; that said will might be established, and the trusts thereof performed and carried into execution, by and under the direction of the court, so far as relates to said mansion house and appurtenances, and in order to give a good title thereto to said Fitzhenry, and to enable the plaintiff to settle the estate of said testator, and to distribute the whole amount thereof among those who are entitled to the same, under said will ; that the rights and interests of the plaintiff and of all parties interested and entitled, under said will, in said mansion house and appurtenances might be ascertained and declared by a decree of the court ; that if Nathaniel P. Russell and said Fitzhenry, as trustees, under said will, for said Mary Dixon, and also for said Georgiana A. Shelton, should appear to the court to have any right to or interest in said house and appurtenances, which should be released and conveyed to said Fitzhenry, in order to vest in him a complete and perfect title to the same, they might be authorized and decreed to do all such acts as might be necessary for confirming the title of said Fitzhenry to said premises, and to vest in him such complete and perfect title.

A writ of subpœna issued, directed to said Fitzhenry, and to him and Nathaniel P. Russell, as trustees, under said will, for Mary Dixon and Georgiana A. Shelton, and to said Thomas and Mary Dixon, and Georgiana A., commanding each of them to appear, and to make answer. They thereupon appeared and filed a demurrer to the bill.

*Dexter*, in support of the demurrer.

*Blake*, for the plaintiff.

HUBBARD, J. The bill seeks to enforce the performance of a contract alleged to have been made by the defendant, Fitzhenry Homer, with the complainant, as the acting executor of the will

of the late Benjamin P. Homer, for the purchase of a valuable real estate, the mansion house of the testator. The bill is demurred to, on the ground that the complainant has not made out such a case as entitles him, in a court of equity, to any relief, as to the matters contained in the bill.

The question arises on the construction of the clause in the testator's will, by which he authorizes and empowers his executors, or such of them as should take upon themselves the probate of the will, to sell and convey all or any of his real estate, not specifically devised, by public auction or private contract, at the discretion of the executors, for the best price they can obtain, and at such times as they may think proper. Under this clause, the complainant contends that he can, as executor, make a good title to the defendant, Fitzhenry Homer, of the mansion house estate, for an agreed price — the said Fitzhenry having resigned his trust as executor — and that he is bound to receive the deed and to pay for the estate, agreeably to the terms of his contract.

The case has been argued with ability, and the attention of the court has been directed to numerous authorities believed to bear on the question raised at the hearing. It has been argued from the words " executors," and " take upon themselves," being in the plural number, that it was the manifest intention of the testator that all the executors named in the will should join in the execution of the power. But we are of opinion that the term " executors," as here used, relates to those persons who actually become such by taking upon themselves the office, and would have been satisfied, if one only of the appointed executors had been qualified to act. That where all renounce but one, such one has the same power and authority in himself, as though he alone had been named as executor ; see *St.* 21 Hen. 8, *c.* 4. *Bonifaut* v. *Greenfield*, Cro. Eliz. 80. If therefore the defendant had originally renounced the executorship, we see no reason why the sole executor might not have executed the power ; it being conferred on the executors by virtue of their office. When executors are individually named in connection with, and who are to execute, the power ; there, all who are mentioned are required to execute it, to give it validity. But where the term used is

simply that of executors, it applies to those who are such, *virtute officii.* *Sharp* v. *Sharp*, 2 Barn. & Ald. 405. *Zebach* v. *Smith*, 3 Binn. 73. *Jackson* v. *Ferris*, 15 Johns. 346. Pow. Dev. 297. But the present is not the case of a renouncing executor, but of one who has taken upon himself the trust, has exercised it in part, and then resigned his office. *Doyle* v. *Blake*, 2 Scho. & Lef. 230. 1 Williams on Executors, 149.

In relation to the authority itself, conferred by the will, we consider it a mere naked power, not coupled with a trust. The mansion house estate is not specifically devised, and the authority given to the executors to sell is discretionary ; such a power as the court could not compel them to execute for any purposes required by the will. It is a power not assignable, being spe cially reposed in the executors by the testator ; nor could it have been executed by a majority of the executors, if there had been more than two.

It is true that one of the executors, (the defendant, Fitzhenry Homer,) prior to executing the contract, resigned his office of executor, and that his resignation was accepted by the judge of probate ; and it is argued by the complainant, that this is equivalent to his never having been qualified for the office. The legal character of this act of resigning his office, after having accepted and acted in it ; whether it can avail to any purpose or not, or whether it is a mere nullity ; the present case does not call upon us to decide. For even supposing it to have been good, so that he can no longer discharge any of the functions of the office, still, as he once accepted the appointment, the authority to execute the power was conferred on him and his co-executor ; it was vested in them, and confined to them, and cannot be performed by one alone. If, then, his resignation is good, the power does not survive to his co-executor, to enable him to pass the estate by force of it. And if the resignation is invalid, and the defendant can now, at his pleasure, resume his trust, then the contract could not be enforced, as a bargain between the two co-executors. Co. Lit. 113 *a.* At common law, it was held that if one of the executors should die, the survivors could not execute a naked power. The act of all was

considered necessary to give effect to the grant. Co. Lit. 112 *a.*
181 *b.*   Jenk. 44.   *Lock* v. *Loggin,* 1 And. 145.   *Franklin*
v. *Osgood,* 14 Johns. 553.   Pow. Dev. 294, 295.   4 Kent
Com. (3d ed.) 325.   *Peter* v. *Beverly,* 10 Pet. 564.   But it
has been held to be sufficient, if the *words* of the will are an-
swered ; and therefore if one make three executors, and devise
his lands to be sold by his *executors,* and one of them die before
the time of sale, the other two may sell ; because the intent of
the testator is taken to be that *such executors,* who shall be alive
when the land is to be sold, shall sell.   Pow. Dev. 296.   Still,
the general rule undoubtedly is, that naked powers are to be
construed strictly, while those which are coupled with a trust
are to receive a liberal construction.   Whatever, then, might be
the authority of the surviving executor to execute this power,
in case of the death of the co-executor, it cannot, during the
life of each, be executed but by both.

It has been argued also, and authorities have been cited to
show, that a trustee may be a purchaser, and that therefore the
present defendant, Homer, who now maintains that relation, may
be called upon to fulfil his contract.

It is true that conveyances by a trustee to his co-trustee have
been sustained, under peculiar circumstances ; but the rule, as
clearly established in the courts of chancery, both in England
and in New York, is, that where a trustee sells the trust estate
and becomes himself the purchaser, he acquires only a voidable
title, and holds the estate subject to the right of the *cestui que
trust* to have the sale set aside, and a new sale ordered under
the direction of the court ; and this though the sale is at public
auction, or otherwise in every respect *bonâ fide.*   In the lan-
guage of Lord Alvanley, " the trustee purchases subject to that
equity, that if the *cestuis que trust* come in a reasonable time,
they may call to have the estate resold.   He must buy with that
clog."   *Campbell* v. *Walker,* 5 Ves. 680, 681.   See also *Ex
parte Bennett,* 10 Ves. 385.   *Davoue* v. *Fanning,* 2 Johns.
Ch. 252.   At law it has been held differently.   *Mackintosh* v.
*Barber,* 1 Bing. 50, and 7 Moore, 315.   See also the case of
*Harrington* v. *Brown,* 5 Pick. 521 ; but there the court observe,

that the principle might be applied here to make the purchaser
— an administrator — hold as a trustee for the heirs, and to com-
pel him to sell the land and pay over the excess above what he
gave for it.

In the present case, no sale has taken place, but a mere con
tract for sale has been made, bearing date two days after the
resignation, by the trustee, of his office of executor, and, as
we may well conclude, agreed upon before such resignation ;
and this contract we are called upon to enforce.   But sitting as
a court of equity, we cannot sustain, upon principles of sound
policy, contracts of a character like the present.   For although
we have no reason to doubt that this individual transaction is
fair in its motives, and beneficial perhaps to the other children
of the testator ; still to affirm it would sanction the princi-
ple, that an executor may bargain with his co-executor for the
estate of the testator, or a part of it, and then, by the resigna-
tion of him who is to have the estate, a conveyance can be
made to him by the other — and this in the exercise of a mere
naked power, and, in the present case, where, as a trustee, he
is still in privity with the estate.   And though conveyances to
trustees may be examined in a court of equity, and set aside,
as it regards heirs or *cestuis que trust*, still the conveyance would
be voidable only in the first instance, and a title might perhaps
be passed to strangers purchasing without notice.   To support
such contracts and· conveyances would lead to frauds upon in-
fants and others unable to protect themselves, and would open
wide the door to all the mischiefs which are intended to be pre-
vented by the denial of the right of a person to be both buyer
and seller.   And though cases may arise where sales to a trus-
tee of the trust property may be supported, yet contracts like
the present are not entitled to the sanction of this court.   Under
these views, the demurrer is sustained, and the bill must be dis-
missed