IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1881.

---

### ANTHONY WEIMAR v. MARTIN FATH.

1. When a will gives to the executors a discretionary power to sell land, and one is removed from the office, the power to sell survives, and can be executed by the remaining executor.
2. The several statutes upon the subject considered and construed.

---

Suit to recover moneys which had been paid by the plaintiff to the defendant on an agreement for the sale and conveyance of certain lands. It was shown, as a defence, that the defendant had tendered a deed, at the appointed time, and that the plaintiff had refused to take it, on the ground that it did not pass the title. The question thus raised was whether the defendant, as the acting executor of the last will of one Metzler, had the legal power to convey these premises. The following was the will:

*First.* It is my will, and I do order, that all my just debts and funeral expenses be duly paid and satisfied as soon as conveniently can be after my decease.

VOL. XIV.            A

*Item.* I give and bequeath to my beloved wife, Anna Margaret, all my household goods and furniture of every kind and description; also all my farming utensils of every kind and description; also my wagons, horses and movable effects; also all my cows and other neat cattle; also all my horses, and in fact all my personal property except moneys, which shall be used to pay my debts.

*Second.* I further give and bequeath to my wife, Anna Margaret, all my real estate property, all lands now in my possession, and all my interests in other lands, to have and to hold as long as she remains my widow, and at her decease or future marriage it is my wish and will that my property be divided among my children, share and share alike.

*Third.* If any time my executors deem it advisable to sell the land, or any part thereof, it is my will and wish they should do so, and the moneys received from such sale to be safely intrusted or invested, and all the interests thereon received from such investment to be given to my wife, Anna Margaret, as long as she remains my widow, and at her decease or future marriage to be divided among my children, share and share alike.

*Lastly.* I hereby appoint my loving wife, Anna Margaret, and my brother-in-law, Anthony Weimar, executors of this my last will and testament and guardians to my children during their minority.

In witness whereof, I have hereunto set my hand and seal this sixteenth day of January, in the year of our Lord one thousand eight hundred and seventy-two.

his<br>
JOHN A. × METZLER.    [L. S.]<br>
mark.

Letters testamentary were duly issued to the executrix and to the defendant; and subsequently, and in the year 1875, the executrix was, by a decree of the Orphans' Court, removed from her office, and her letters testamentary revoked.

The case was tried before the Circuit Court, without a jury,

and came before this court on writ of error and bill of exceptions.

Argued at November Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff in error, *William S. Gummere.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. In pursuance of a certain article of agreement, the plaintiff in error, Anthony Weimar, tendered to Martin Fath, the defendant in error, a conveyance of a tract of land; and the single question is, whether he was clothed with the legal competency to make such instrument. In demonstration of his right, the court is referred to the will of one Metzler, who died seized of the premises in question. From an inspection of the document, it appears that the testator, after having given to his wife his personal property, and also the use of his lands, during widowhood, expressed his further will in these words, to wit: "If at any time my executors deem it advisable to sell the land, or any part thereof, it is my will and wish that they should do so, and the moneys received from such sale to be safely intrusted or invested, and all the interests thereon received from such investment to be given to my wife, Anna Margaret, as long as she remains my widow, and at her decease or future marriage, to be divided among my children, share and share alike."

From the bill of exceptions, the further fact is shown that although the wife of the testator proved the will, and, in conjunction with the plaintiff in error, obtained letters testamentary, she was subsequently removed from her office, and her letters revoked by a decree of the Orphans' Court. It was subsequent to this last event, and in this posture of affairs, that the deed which is now challenged was made. That this will gave the right to the executrix and this executor, before the removal of the former, by their joint act, to execute this deed, is not in doubt; the uncertainty is, whether such right

became vested in the executor, after the executrix had been put out of her executorship.

The problem thus presented has two legal aspects; the one in its relation to the common law; the other, in its relation to the statutory regulations existing in this state.

Looking at the subject under the first head, it would, perhaps, be too much to say that the decisions demonstrably show that the right to sell this land, on the extinction of the one executorship, was, by operation of law, transmitted to the other executor. Yet, I am inclined to think that if there was no other ground of decision, and the case was to be settled by the test of general principles, that such would be the conclusion to which we would be led. In this instance, as it is clear that no estate was vested by this devise in the executors, we have to do with the topic of the transmissibility, or rather the survival of a naked power. And, with respect to such a competency, the general rule is, that where a power is given to two or more persons, as individuals, it will not survive without express words. Thus, if an authority were given to A and to B, *nominatim*, to sell designated lands, and they should also be appointed executors in the will containing this authority, if either should refuse to take the office, or should die, it has been almost uniformly adjudged that the other executor could not validly execute such power. In such expressions it has been deemed that the purpose appears to be to put a confidence in the *individuals* who are thus named. But the legal effect is the opposite of this when, instead of there being an express designation of individuals, there is a designation, as recipients of the authority, of a class of officers, for, in such circumstances, the power is supposed to be intended to be lodged, not in any particular individuals, but in all persons who at any time fill such office. This distinction is very ancient, and is clearly defined by Lord Coke, in his comments on the one hundred and sixty-ninth section of Littleton. *Co. Litt.* 113 *a.* And Sir Edward Sugden, in his essay on Powers, vol. I., p. 144, in summarizing the rules of law on this subject, as he found them established by the adju-

dications, among his conclusions thus expresses the same principle, viz., that where the authority is given to executors, "and the will does not expressly point to a joint exercise of it, even a single surviving executor may execute it." One of the principal cases in support of this proposition is that of *Howell* v. *Barnes*, *Cro. Car.* 382, in which the facts were, that the testator devised lands to his wife for life, and directed that afterwards the same be sold by his executors thereinafter named, and directed the moneys thence arising to be divided amongst his nephews. Two executors were appointed, one of whom died, and the inquiry was whether the survivor could sell such property. The judges all agreed that the executors had not any interest by this devise, but only an authority, and that the surviving executor, notwithstanding the death of his companion, might sell. The principle was that the power was confided to the officers answering to the description of executors, and not to denominated individuals. This authority has, of late, been signally endorsed. In *Brassey* v. *Chalmers*, 16 *Beav.* 233, we find the same rule elucidated. The language of the will was, "I authorize and empower my executors hereinafter mentioned, with the approbation of my trustees for the time being, to sell and dispose of, by private contract or public auction, from time to time, all, or any part, of my said feehold estates, and to exchange the same, or any part thereof, for other feehold or leasehold property of equal value," &c. The original trustees had died, and substitutes had been appointed by the Court of Chancery. There had been two executors, and one having died, the question was, whether the survivor could sell and convey the designated property. Sir John Romilly, sitting as Master of the Rolls, had denied the survival of the power, founding such view on certain supposed indications in the peculiar provisions of the will; but such construction was rejected in the House of Lords, and the authority was decided to subsist in the single executor, according to the rule contained in the case just cited from Cro. Car., which seemed to be regarded as entirely authoritative on the subject. Even long before this latest decision, we find Mr.

Hargrave, in his notes in Co. Litt., at the page already cited, endeavoring for this same doctrine, for his contention is that where the power is given to *executors* in contradistinction to particular persons, *nominatim*, the survivor may sell, inasmuch as such power is given to them *ratione officii;* and as the office survives, such is the reasoning, the authority should likewise survive. And it was these grounds of doctrine, drawn from ancient sources, that led Sir Edward Sugden to the anticipation which has, in a great degree, been realized in the case above cited from the House of Lords, which he thus expresses: "And the liberality of modern times will probably induce the courts to hold that in every case where the power is given to *executors*, as the office survives so may the power."

Assuming this to be the common law rule, derived from the general principles of jurisprudence, it seems plain that, by force of that rule, the power to make the conveyance resided in the plaintiff in error, after the removal of the executrix from office. In this will the power of sale is given to the "*executors*," and is not vested in individuals who are named; and therefore, in the language of the authorities, as the office survived the authority survived. According to the theory above explained, when the testator said that his executors, when they should deem it advisable, might sell, the meaning was, that such discretionary power should be exercised by a class of officers; and the remaining executor represents that class. In such an instance, as in other like cases, the power is annexed to the office, and not to specified donees of the power.

But I also think that a careful collation and examination of the several provisions of the statutes of this state upon this subject, will conduct an inquirer to this same result. As the construction of these laws must affect past as well as future titles to real estate, the matter has received that careful consideration which its importance seemed to demand.

The provision which at present regulates this subject is the tenth section of the act concerning executors and administra-

tors.   *Rev., p.* 395.   This section is a consolidation in the revision of 1847, (*R. S., p.* 350,) of four several acts, that is to say, the original act, which is a modification, by Judge Paterson, of the statute of Henry VIII., and the three consecutive laws extending its operation, which are to be found in *R. S., pp.* 573, 605, and in *Harr. Comp., p.* 19.   The language of the section as thus made up and condensed, is as follows :   " Where any lands, tenements or hereditaments have been or shall be given or devised by any last will, executed in due form of law, to the executors therein named, or any of them, to be sold, or have been or shall be thereby ordered to be sold by the executors therein named, or any of them, or one or more of said executors shall die, or have died in the lifetime of the testator, or if living at the death of the testator, shall refuse or neglect to prove the said last will and testament, or shall die, or if, having proved said last will and taken upon himself, herself or themselves the execution thereof, shall have died or shall die, then, and in either case, the said trusts in said will shall vest in the other executor or executors in said will named, who shall prove, or shall have proved said will, and in the survivor and survivors of them, unless it shall be otherwise expressed in said will ; and it shall be lawful for such acting or surviving executor or executors to sell and convey the said lands, tenements and hereditaments of the testator, in the same manner, to all intents and purposes, as if all had been living and had joined in such sale."

The first topic for comment arising out of this provision, in its application to the present case, is its phraseology descriptive of the classes of wills to which it applies.   It embraces two kinds of wills; first, those containing a devise to the executors for the purpose of making sale; and, second, those containing a naked power of sale.   In the case now pending we have to do with this latter category, and the question is whether the present testamentary clause is comprised in it. By the statutory letter, the section becomes applicable, when in the will the lands are " *ordered* to be sold by the executors

therein named ;" and in the present will, the power of sale is thus given : "If at any time my executors deem it advisable to sell the land or any part thereof, it is my will and wish they should do so," &c. By the giving of such an authority is the land "ordered" to be sold, within the statutory sense? My construction is that this statutory phrase must be held to refer to every power of sale unless the will otherwise plainly imposes a limitation. The word "ordered" is not to be restrained to the signification of peremptory command, but comprehends the wider meaning of the term "authorized." And such, obviously, has been the sense in which this expression has been read. In *Corlies* v. *Little*, 2 *Green* 373, Chief Justice Hornblower was manifestly under the persuasion that there was no difference, under the form of this statute, whether a will "directed" or "authorized" a sale to be made, for he uses these terms in this connection as synonymous. And it is evident that Chancellor Kent has the same view. 4 *Kent Com.* 327, *b*. To contract the scope of this provision so as to permit it to embrace only that class of cases in which an absolute mandate to executors to make sale has been given, would very materially impair its usefulness, for by so doing a large part of these testamentary powers of sale would be left without any statutory regulation. The act is remedial, and is to be interpreted, not by its letter, but by its spirit. And it was in this way that the act of Henry VIII., which has been above referred to as the original of Judge Paterson's law, was treated by the English courts, for it was amplified by construction so as to embrace a class of cases which were plainly outside of its letter, the reason being, as Lord Coke tells us, that it was "a beneficial law." *Co. Litt.* 113, *a*. Nor would a verbal narrowness of construction answer the purpose of keeping this section in harmony with the context of this statute, for the very next section is plainly extended over the field from which it, by this limited interpretation, would be excluded, while, at the same time, there would seem to be no reason for such exclusion. Section 11 is the one indicated, and it gives to administrators with the will annexed, or the

survivors or survivor of them, the right to sell and convey land in pursuance of the "power or direction" of the will annexed, in the same way as the executors or executor could have made such sale and conveyance. So, also, the next section provides for the appointment of an administrator to execute a will that names no executors, but which "authorizes or directs" lands to be sold. It would certainly seem that it is out of all reason to suppose that it was the legislative design to permit a surviving administrator with the will annexed, to sell land which was merely authorized by the testator to be sold, and to withhold such a power from the surviving executor. I regard it as quite clear that all these sections were designed to befriend and carry into effect, in various situations, the same classes of testamentary power, and that they each embrace every power of sale deposited in executors, except when the will itself otherwise provides.

Such would have been the position of the plaintiff in error if he had simply occupied the attitude before the court of a surviving executor; but he stands upon higher ground even than this, for as the executrix has been removed from office by a decree of the Orphans' Court, there is another statute that is applicable, and which is highly favorable to his claims. I refer to the one hundred and twenty-ninth section of the Orphans' Court act, which makes provision for the appointment of a successor of an executor who has been removed. After establishing a regulation for that purpose, the section contains this proviso: "*Provided, nevertheless*, that where one or more of the executors, &c., shall be removed or discharged, the office shall survive and devolve upon the others, who shall proceed with the performance of the duties thereof, and shall be entitled to the property and assets, and to sue for and receive the same, in the same manner as if such remaining executor or executors, &c., had been solely appointed to such office." Upon the removal, then, of this executrix, the office, to use the language of this act, survived and devolved upon the plaintiff in error, and he was to proceed with. the performance of the duties thereof, in the same manner as if he had been solely appointed

to such office; and consequently, as it cannot be reasonably alleged that the power of sale was not a part of his executorship, such power became vested in him in his separate capacity. For it will be noticed that the statute casts upon the remaining executor the performance of all the duties of the office without any exception, and therefore those which are discretionary must be embraced, as well as those which are absolute. I can see no reason to doubt that this provision was intended to effect the useful end of empowering the survivors or survivor of executors, when an associate had been removed, to perform every function which could have been performed but for such removal, by the joint act of all, unless in those cases where the will itself limited the exercise of any particular power to the original donees of such power. And it is the plain intention of the act that the power shall not be considered so restricted to the original executors unless in cases in which there is a clear testamentary intent to that purpose. The language of the act is strong on this subject, for it declares that the surviving executor shall exercise the authority which was originally joint, "unless it shall be otherwise expressed in said will." The letter of this phrase would seem to signify that nothing short of an express declaration in the will itself, to the effect that the power should not be exercised except jointly by all the executors, will prevent one or more of the survivors from the exercise of the power by force of the act. If direct expression of the trust is not to be required, it is safe to say that the implication which should restrict the right to use the power to all the donees of it, should be so cogent as to be almost equivalent to such actual expression. This requirement of the statute is a wise and necessary one, for it would be disastrous to leave so important a matter in the least uncertainty. Until it shall have been conclusively settled that the will does not, in the given case, provide that the power to sell shall not be exercised except by all the executors, no title can be safely taken, under the statute, from a survivor, and the consequence is that nothing could be more impolitic than to let such a question depend for a solu-

Weimar v. Fath.

tion upon uncertain phrases or conjectured purposes, to be gathered from the instrument at large. In the present instance it has been intimated that a purpose to require the action of all the executors has been manifested in the circumstance that the power in question is a discretionary one. But the discretion thus appealed to is nothing but that common discretion that is made use of in the transaction of ordinary business. When it is best to turn land into money is a matter to be decided by any one of ordinary intelligence and knowledge; and to assume from the fact that such an affair has been left to the executors, that it implies a personal confidence in the whole of them, and indicates an intention to be satisfied with nothing less than their joint act, is to place the entire subject on the most uncertain basis. In all cases in which a bare authority or permission to the executors to sell land should be given, such a confidence might be imputed, and a discretion, in such a respect, is vaguely apparent in wills in a multitude of varied forms, either from expression or implication. To make this important statutory provision to depend for its application on such a shadowy question as this would deprive it of a great part of its value. It is far better, as I must think, to adopt the statutory criterion, and say that the surviving executor can execute the power of sale, " unless it shall be otherwise expressed in the said will." Such a guide has the transcendent merit of being a safe one, which is the principal thing in such an affair. But, further : however this may be, on general principles, I see no room to doubt that, under the clause of the statute already referred to, which relates to the removal of executors under certain conditions, and provides that in such event the " office shall survive," and that the remaining executor shall proceed with the performance of the duties of the executorship in the same manner as if he had been solely appointed to such office, the plaintiff in error had the right to make the deed in question.

And before dismissing this subject it is proper to say that almost all the authorities harmonize with the view here expressed. The statutes in several of the states are, in this

department, analogous to our own, so that some of the statutory expressions above discussed have received attention elsewhere. This is notably so with respect to the question whether the terms in our act, "ordered to be sold," embrace, not only peremptory directions to make sale, but, as well, discretionary authorities of sale. In *Taylor* v. *Morris*, 1 *Comst.* 341, this subject was fully discussed and all the cases reviewed. The will in that case gave the power to the executors to sell and convey the land, "in case they should find it proper or most fit in their opinion." And the question was whether the single acting executor could execute such power by force of the statute of that state, which only applied where the land "is ordered by any last will to be sold by the executors." It will be observed that both the language of such act and of the will was, in substance, the same as is presented in the present instance. The argument then, as now, was that the statute applies only to those cases in which the land is *ordered* to be sold by the positive command of the testator, and not to the case where there is a discretion given to the executors to determine whether or not the land shall be sold. But the court declared this position not to be tenable, and said that "the statute was designed as a remedy for the oversight of a testator in not providing for the contingency that some of his executors might refuse to serve; and it was framed upon the presumption and belief that if that contingency had been foreseen, the testator would have preferred that one of his executors should execute the power alone, rather than it should fail. This presumption applies with as much force to the case of a discretionary power as to one of a mandatory character." The same method of construction was applied, under substantially similar conditions in *Brown* v. *Armistead*, 6 *Rand.* 593. It was a case of a discretionary power of sale given to the executors, and this authority had been executed by an administrator with the will annexed, and the point was whether it fell within the scope of the Kentucky statute, which was taken, as our own is, from the 21 Hen. VIII., c. 4. The court said: "It was admitted in the argument

that if the testator had directed a positive and unconditional sale of the land by his executors, the case would have come directly within the law. But they are directed to sell, provided the land will sell for as much, in their judgment, as will be equal to its value ; and this, it is insisted, renders it a special confidence reposed in the individuals appointed executors, which is personal to them, and can only be exercised by them, and not even by a part of them, but by the whole only. This point was argued with great strength, but the researches of counsel have enabled him to produce no cases in support of it, nor have I found any." It was adjudged that the power had been well executed. The following cases support the same conclusion: *Lessee of Zebach* v. *Smith*, 3 *Binn.* 69 ; *Chanet* v. *Villepoteaux*, 3 *McCord.* 29 ; *Wood* v. *Sparks*, 1 *Dev. & Bat.* 389.

Let the judgment be reversed.