54 281
56 197
54 281
92 447
54 281
103 642

BENJAMIN VERNOR v. AMANDA M. COVILLE, SAMUEL H. SMITHERS AND JOHN WEBSTER.

*Wills—Power of individual executor to sell realty.*

1. The clause in a will which empowers the executors " to sell and convey any real estate " will be a sufficient warrant for a sale made by one of two executors if the other has renounced the trust, the " authorized " executors having the same authority as all to perform every act allowed by the will: How. Stat. § 5844.

2. The language in a will which gives an executor his authority is presumed to have been made with reference to the statutory provisions relating thereto, and must be construed as if it embraced those provisions.

Error to the Superior Court of Detroit. (Chipman J.) June 12.—June 25.

ASSUMPSIT. Plaintiff brings error. Reversed.

*Charles M. Swift* for appellant. The question is, where a general power to sell lands is given to executors and only one qualifies, can he make a valid conveyance under How. Stat. § 5844, which is :

" When all the executors appointed in any will shall not be authorized, according to the provisions of this chapter, to act as such, such as are authorized shall have the same authority to perform every act, and discharge every trust required and allowed by the will, and their acts shall be as valid and effectual for every purpose as if all were authorized, and should act together ; and administrators with the will annexed, shall have the same authority to perform every act, and discharge every trust, as the executor named in the will would have had, and their acts shall be as valid and effectual for every purpose."

Judicial construction is not called for, because the language is entirely unambiguous. The executor who is authorized is the executor who qualifies " according to the provisions of this chapter," *i. e.*, gives the required bond and receives

letters testamentary. Being so authorized, he is given the same authority to perform every act and discharge every trust required and allowed by the will which he and his co-executor would have had if both had qualified.

The words of the statute and the subject matter directly oppose defendant's contention that the statute applies only to such acts of executors as are purely administrative. The intent of the Legislature is unmistakable. The authorized executors are given power to do certain acts and discharge certain trusts. These are not the acts and trusts incident to the administration of the estate, or such acts and trusts with the addition of some others mentioned in the will, but "every act and every trust required and allowed by the will." But if the Legislature had in mind to give to the authorized executors administrative powers simply, the enactment in question is entirely unnecessary, for there are other sections amply providing that much.

Section 5837 provides:

"No person named as executor in any will, who shall refuse to accept the trust, or shall neglect to give bond as prescribed in this chapter, for twenty days after the probate of such will, shall intermeddle or act as executor."

Section 5838 follows:

"If a person, named executor in any will, shall refuse to accept the trust, or shall, for the space of twenty days after the probate of the same, neglect to give bond, as required by law, the probate court may grant letters testamentary to the other executors, if there be any who are capable and willing to accept the trust, and if there be no such other executor, who will give bond, the court may commit administration of the estate, with the will annexed, to such person as would have been entitled to the same, if the testator had died intestate."

Thus, if after twenty days, an executor refuses or neglects to qualify, his authority may become extinguished. Other sections of the same chapter cover instances where the authority of an executor may be terminated by death or removal.

Section 5843 provides:

"When an executor shall die or be removed, or his authority shall be extinguished, the remaining executor, if there be any, may execute the trust; and if there shall be no other executor, administration, with the will annexed, may be granted of the estate not already administered."

And by section 5840:

Administrators with the will annexed "shall proceed in all things to execute the trust in the same manner as an executor would be required to do."

Now, if only duties connected with the administration were intended by the Legislature to survive to the qualifying executor, that end is fully secured by the sections above

quoted. Again, there is authority for the proposition that independent of any statutory provisions, administrative duties or powers would descend upon those executors who qualify, and those only : *Houell v. Barnes* Cro. Car. 382 ; *Marr v. Peay* 2 Murph. 84 ; *Treadwell v. Cordis* 5 Gray 341, 360 ; *Chandler v. Rider* 102 Mass. 268.

No statute similar to this has ever been construed so far as has been discovered, except in *Re Besley's Estate* 18 Wis. 451.

Where the management and sale of property for the care of an insane sister, was confided to the testator's brother as sole executor by devise to him alone, and upon his death, an administrator, with the will annexed, was held not entitled to discharge the trust. The authorities cited are New York cases, dependent on the statute for which the Legislature of Michigan substituted the present enactment. The New York statute, which is in the words of section 9, chap. 1, title 4, of the Mich. Revised Statutes, 1838, reads as follows :

" In all cases where letters of administration with the will annexed, shall be granted, the will of the deceased shall be observed and performed; and administrators with the will annexed shall have the same rights and powers and be subject to the same duties, as if they had been appointed the executors of such will."

The leading case cited in *Re Besley's Estate* and relied on in nearly all of the other cases on the subject, is *Conklin v. Edgerton's Admrs* 21 Wend. 430 ; 25 Wend. 224. By reason of peculiarities in the New York revision, this statute was held not applicable to real estate, and was construed to confer upon administrators with the will annexed only such powers as executors would have at common law, or such as is given them under the provisions of the chapter in which the section quoted occurs; and the bulk of the opinion in the lower court consists in pointing out that the power of sale is not such a power as pertains to the office of executor. On review Chancellor Walworth decided on different ground.

The contrast between the New York and Michigan enactments is apparent at a glance, and it would not seem entirely unreasonable to adopt the construction claimed by Justice Cowen, since all the cases seem unwilling to extend the powers of administrators with the will annexed. By the New York provision, such administrators were to have the same rights and powers and be subject to the same duties as if they had been appointed executors. This is not entirely free from ambiguity. This is an opportunity to claim, with some show of reason, that the rights and powers referred to

include simply such as they would receive from the probate court. But in the Michigan statute which has been substituted for this enactment, no such doubt can arise. For here the powers and duties cover "every act and every trust required and allowed by the will."

Some Pennsylvania decisions may be relied upon by the defense. But they are subject to the same criticism.

The statute there reads:

"All and singular the provision of this act relative to the powers, duties and liabilities of executors, are hereby extended to administrators with the will annexed," which plainly restricts the powers to such as occur in administration. *Ross v. Barclay* 18 Penn. St. 179; *Waters v. Margerum* 60 Penn. St. 39.

It is worthy of observation that while courts seem desirous of restricting the authority of administrators with the will annexed, the beneficent character of enactments similar to the statute of 21 Hen. VIII. c. 4, is recognized and a broad rule of construction adopted. To illustrate: The New York statute, which is a substantial reproduction of the statute of 21 Hen. VIII. c. 4, is as follows:

"Where any real estate or any interest therein is given or devised by any will legally executed, to the executors therein named, or any of them, to be sold by them, or any of them, or when such estate is ordered by any last will to be sold by executors, and any such executor shall neglect or refuse to take upon him the execution of such will, then all sales made by the executor or executors who shall take upon them the execution of such will shall be equally valid as if the other executors had joined in such sale:" *Taylor v. Morris* 1 N. Y. 349.

This provision occurs in the chapter relating to sales by executors or administrators under orders of the probate court, which are always for administrative purposes, and not otherwise. Might not the court, then, if disposed to be technical, have limited the section to such sales only as occur in the course of administration? But as before observed, recognizing the embarrassments which these statutes seek to remedy, all the courts have been very liberal in construing such provisions: *Evans v. Chew* 71 Penn. St. 47; *Lantz v. Boyer* 81 id. 325; *Nelson v. Carrington* 4 Munf. 333; *McDowell v. Gray* 29 Penn. St. 211; *Pahlman v. Smith* 23 Ill. 448; *Taylor v. Galloway* 1 Ohio 232; *Zebach v. Smith* 3 Binn. 69; *Taylor v. Morris* 1 N. Y. 346; *Clinefelter v. Ayers* 16 Ill. 329; *Chanet v. Villeponteaux* 3 McC. 29; *Wood v. Sparks* 1 Dev. & Bat. 389; *Brown v. Armistead* 6 Rand. 593; *Coleman v. McKinney* 3 J. J. Marsh. 246; *Ross v. Clore* 3 Dana 189; *Wells v. Lewis* 4 Met. (Ky.) 269; *Britton v. Lewis* 8 Rich. Eq. 271; *DeSaussure v. Lyons* 9 S. C. 492; *Jennings v. Teague* 14 S. C. 229.

*Alfred E. Hawes* for appellees. A contract made by an executor after the period has expired within which he is authorized to administer on the estate (How. Stat. §§ 5918–21; *Hoffman v. Beard* 32 Mich. 222) cannot be regarded as an act of administration if there is nothing to show that the time was extended during which he could make it: *Biddle v. Wendell* 37 Mich. 452; *Larzelere v. Starkweather* 38 Mich. 100; *Church v. Holcomb* 45 Mich. 37; *Daly's Appeal* 47 Mich. 443; ordinarily the executor's custody of the estate is supposed to cease with the lapse of the statutory period of administration. Then the estate, real and personal, is supposed to have been relieved of all charges: *Hoffman v. Beard* 32 Mich. 222–3; and under How. Stat. § 5964, the right to a partition and distribution among the beneficiaries is complete. Then in the language of *Calkins v. Smith's Estate* 41 Mich. 412: "At that stage of his proceedings the executor's duties may be said to be closed, nothing remaining to be done by him as such, except the rendering and adjustment of his own account. What further he has to do in respect to the estate was to be done not as executor but as donee of a power in trust." See also *Battelle v. Parks* 2 Mich. 531; *Re Besley's Estate* 18 Wis. 451. The Statute of Limitations affecting rights of action upon the executor's bond begin to run at the expiration of said four years and six months at the latest: *Biddle v. Wendell* 37 Mich. 454; so acts and trusts, directed or reposed by the will in the persons named and acting as executors, have been held by this court to vest in them as donees of a power in trust when they are to be performed after the limit allowed for administration: *Calkins v. Smith's Estate* 41 Mich. 412; *Battelle v. Parks* 2 Mich. 531; during administration executors are mere officers of the law: *Gilkey v. Hamilton* 22 Mich. 286; after administration they are the attorneys of the testatrix, and the will is their power of attorney: *Battelle v. Parks* 2 Mich. 531; *Calkins v. Smith's Estate* 41 Mich. 412; what renders it more apparent that the section in question does not reach the contract in question, is the provision that an administrator with the will annexed, shall have the same authority as the authorized executor. And we are unable to find it has ever been held that such an administrator could make a sale of real estate after administration, although the same might have been done by the donee of a power in trust named in the will the administrator had been appointed to execute: *Ross v. Barclay* 18 Penn. St. 179; *Waters v. Margerum* 60 Penn. St. 39; in view of

the fact that the statute had barred the right to make the contract as an act of administration; that it was unauthorized by the first and fourth clauses of the will; that it was authorized only as an act of adminstration; that the executor's bond can have no separate and independent force to affect the rights of the donees of a power in trust to authorize one and disempower the other, it belonging to the purely administrative proceedings; that the contract in question was executed by one executor alone when the other (under How. Stat. § 5628) should have joined; that the contract is void, and the plaintiff never acquired title to the note in suit: *Houell v. Barnes* Cro. Car. 382; *Marr v. Peay* 2 Murph. 84; *Roseboom v. Mosher* 2 Denio 61; *Taylor v. Morris* 1. N. Y. 341; *Treadwell v. Cordis* 5 Gray 341–360; *Chandler v. Rider* 102 Mass. 268; *Floyd v. Johnson* 2 Lit. 109; *Hetzel v. Barber* 69 N. Y. 1.

SHERWOOD, J. Martha Rumney on the 8th day of May, 1875, made her last will disposing of both real and personal estate. The will is as follows:

"*First.* I hereby give and bequeath to my only daughter, Mary E Rumney, the interest and income of the sum of twenty-five hundred dollars, now loaned out on three bonds and mortgages made by James Dewey, Jacob A. T. Wendell and George W Bryant, now in the hands of my attorney, Edward C. Walker, to be kept on interest in the best manner for that purpose by my executors for and during so long a time as she shall remain unmarried; the same to be divided equally between all my children whenever she shall marry.

*Second.* I desire that my executors shall pay all my just debts, but out of other property than the twenty-five hundred dollars aforesaid, which I desire shall be kept for her support and maintenance so long as she shall remain unmarried.

*Third.* All the rest and residue of my estate I hereby devise and bequeath to my children, John G. Rumney, Mason P. Rumney, Mary E. Rumney, Benjamin Rumney and Henry R. Rumney, to them, their heirs and assigns forever, to be divided equally between them, share and share alike. In case any of them should die, leaving issue; the issue to take the share that would have fallen to the parent by representation.

*Fourth.* I will and direct that the share of my estate hereinabove bequeathed and devised to my sons Benjamin Rum-

ney and Henry R. Rumney, shall remain in the hands of my executors until they reach respectively the age of twenty-five years, receiving meantime the income from the same; leaving it however to the wisdom and discretion of my executors to deliver to them respectively their shares of said estate at any time after they reach the age of twenty-one, or any part thereof, if said executors are fully satisfied in either case that said share will be safely, wisely and judiciously used.

*Fifth.* I hereby nominate and appoint my son, John G. Rumney, and my friend, Guy F. Hinchman, the executors of this my last will and testament, with full power and authority to sell and convey any real estate of which I shall die seized.

*Sixth.* Before the partition of my estate I direct my said executors to pay and refund to any and each one of my children any sum or sums they may have advanced for the support and expense of the family between the death of their father and my decease, less the proper value of their own board and maintenance during that period.

*Seventh.* It is my earnest desire that after my decease my children shall continue to live together and shall constitute one family as heretofore.

*Eighth.* I direct that my said executors shall not be required to give bonds."

Mrs. Rumney died, and on the 25th day of April, 1875, her will above mentioned was admitted to probate in Wayne county. John G. Rumney duly qualified under his appointment as executor, and letters testamentary were issued to him. Guy F. Hinchman, the other executor named in the will, declined to qualify or act, and John G. Rumney has ever since acted as the sole executor of the will, carrying out its provisions to the best of his ability, and so far as the record discloses, to the entire satisfaction of all the heirs and legatees interested in the will or the estate.

The executor, John G. Rumney on the 4th day of April, 1882, gave to the defendant John Webster an agreement to sell to him the homestead property belonging to the estate. All the heirs and executors were to sign the deed of convey- ance. This contract was in writing, and is as follows:

"Whereas, John Webster, of Detroit, Michigan, is nego- tiating with John G. Rumney, as executor of the estate of Martha J. Rumney, for the purchase of the homestead prop-

erty of said estate, in the city of Detroit, the same being
No. 91 High street east, lot 60 feet front by 165 feet, more
or less, deep, the terms agreed upon being as follows, viz. :
Said Webster to assume the $5000 mortgage upon said prop-
erty, and pay in cash enough with $598.25, A. M. Coville &
Co.'s note, to make up $1500, at time of delivery of perfect
title paper and the balance of $2000 as follows: $500
endorsed note at six months; second mortgage on said prop-
erty for $1500, due on or before two years from date, with
the privilege of paying said $1500, second mortgage, in $500
payments at date interest accrues, viz., semi-annually; said
$500 endorsed note to be bankable; trade to be consummated
within a reasonable time ; all the heirs and executors to be
grantors.    To secure the fulfillment of this agreement, said
Webster has delivered said Coville & Co.'s note, and said
John G. Rumney $250 in cash, to Benjamin Vernor, of
Detroit, Michigan.

The parties mutually bind themselves to the fulfillment of
the above agreement.

JOHN WEBSTER.<br>
JNO. G. RUMNEY,<br>
Executor Estate of Martha G. Rumney.

In presence of
  A. E. HAWES.
*Detroit, April 4, 1882.*"

The executor deposited with the plaintiff the $250, and
John Webster deposited the note with the plaintiff, men-
tioned in and required by the contract, and as this Court has
heretofore held, for security for the performance of the same.
See 51 Mich. 186.   Before the sale of the homestead was
perfected by giving a deed of the property the note depos-
ited became due, and after the executor had tendered a con-
veyance to Webster made and executed by all the heirs, in
accordance with the contract, and the same had been refused
by him, Rumney then claimed he was entitled to the note
deposited, and gave the plaintiff a bond of indemnity, took
the note and brought suit thereon against both makers and
indorser.

Substantially the same matters were set up in defense as
are now pleaded in this case.   A recovery was had thereon
in the superior court of Detroit, and on appeal to this Court

that judgment was reversed—the Court holding that the present plaintiff, and not the executor, was the proper person to bring suit. That suit was then discontinued, and the note retransferred to the plaintiff, and this suit brought thereon against the makers and indorser.

The declaration is in assumpsit on all the common counts. The defendant pleaded the general issue with notice of several defenses, all indicating the intention of defendant to show on the trial of the case a want of title in the plaintiff and of any right to bring the suit, and that Webster's indorsement of the note was without consideration and invalid.

It is claimed by counsel for the defendants that the power was not conferred upon John Rumney alone, under the will, to make the sale of the homestead property in the contract heretofore given, contemplated, and that his letters of administration gave him no additional power for that purpose; that the power attempted to be used could only be exercised by both persons named in the will as executors, and that no sale of real estate could be made by Rumney alone, except as authorized by the judge of probate; and that the contract which was the consideration of Webster's indorsement and which gave the plaintiff his right to the custody of the note was therefore void, and the plaintiff could not recover. This point raises the only question we deem it necessary to consider, and adopting the counsel's premises, the conclusion to which he arrives necessarily follows.

The question raised is one of much importance to the people of our State. When the case was before this Court before, this question was not finally determined, the proper party plaintiff not then being before the Court. The solution of the question depends upon the proper construction of the will and the statutes relating to the subject. The language of the will under which the executor claims to derive his authority is plain and explicit, and it must be construed the same as though the provisions of the statute relating thereto and applicable were written in the instrument, as they neces-

sarily constitute a part thereof, and it must be regarded as having been made with reference thereto.

The power of the executor to make sale of the real estate, and the contract for the sale thereof, which we are now considering, is given by the will if at all, and is not derived from any authority conferred by the judge of probate.

It is very clear from the terms of the will, that Mrs. Rumney had great confidence in the persons named as her executors, as they were charged with important discretionary duties, and the exercise of much discrimination and judgment in the disposition, management and control of the property designed for the children, of the most difficult and delicate character. And in such a case, nothing but imperative duty can ever excuse a court in disturbing or interfering with the action taken by the executors.

No question is or can be made about the power of both persons named as executors to do the act in question had both consented to serve and qualified. Hinchman renounced the trust and refused to qualify. His relation to the will and the trust was thereby rendered the same as though he had died. Could the remaining executor execute the powers and trust created under the will when there was no express provision authorizing one of the executors so to do, in case of the death of the other or his failure to qualify? There is no question but that one under such circumstances may exercise the powers and discharge the duties conferred upon both, in the management and disposition of the personal estate, and bind all persons interested therein. Dyer 23; 11 Viners' Abr. 271; Bac. Abr. D. 1; 2 Williams Ex'rs, 810; *Jacomb v. Harwood* 2 Ves. Sr. 267; *Wheeler v. Wheeler* 9 Cow. 34; *Bogert v. Hertell* 4 Hill 492, 503; *Weir v. Mosher* 19 Wis. 311; *Herald v. Harper* 8 Blackf. 170; *Dominick v. Michael* 4 Sandf. 406; *Boughton v. Flint* 13 Hun 206. Co-executors and co-administrators are regarded, in law, as but one person, and acts done by one are deemed the acts of all in all matters relating to the personal estate. One may execute a valid release of a debt. *Murray v. Blatchford* 1 Wend. 583. He may discharge a mortgage. *People v. Key-*

*ser* 28 N. Y. 226. May make an assignment of a mortgage. *Cronin v. Hazeltine* 3 Allen 324. And this Court has held that a deed made by one of two or more administrators was not void and not subject to attack in collateral proceedings. *Osman v. Traphagen* 23 Mich. 80.

It is claimed by plaintiff's counsel that the following provision of our statute, if the power did not exist at common law, gives full authority to the one executor in this case to make valid sale of the real estate of the deceased, and authorized him to make the contract in question. The statute reads as follows:

"When all the executors appointed in any will shall not be authorized, according to the provisions of this chapter, to act as such, such as are authorized shall have the same authority to perform every act, and discharge every trust required and allowed by the will, and their acts shall be as valid and effectual for every purpose, as if all were authorized, and should act together; and administrators with the will annexed, shall have the same authority to perform every act, and discharge every trust, as the executor named in the will would have had, and their acts shall be as valid and effectual for every purpose." How. Stat. § 5844.

I think this provision clearly authorizes the executor in this case to sell the real estate of the deceased mentioned in the will, and to make the contract for the sale thereof, to secure the performance of which the deposit of the note in question and its indorsement were made. Not only is the sale authorized, but the designation of the person and his power to make it are derived solely from the will. The probate of the will and letters testamentary furnish no more than the evidence of the existence of these things, and not the authority for doing them.

I think it may well be doubted whether the provisions of our statute, or that of 21 Hen. VIII. c. 4, so far as it relates to executors, is anything more than confirmatory of the common law upon this subject. *Bonifaut v. Greenfield* 1 Cro. 80; Co. Litt. 113*a*.

Whether this be so or not it is quite certain that the spirit of the law requires that the intention of the testator, as

expressed in his will, should be carried out. This could be as well accomplished usually by one person as by more; and whatever number may be selected, they are all supposed to be chosen with special reference to their qualifications for the position, and to be prepared to act in accordance with the views and desires of the testator concerning the execution of the trust; and however large the number may be, each is vested with all the powers of the others, and all are required to perform the same duty or duties, and in the discharge of them they act as an individual. But life and ability to act are always uncertain. That the testator may always have some person of his own choosing to execute his will in case of the death or inability of the other to act, is undoubtedly the principal object of appointing two or more executors, and to hold that the inability of one thus appointed to act, or his neglect to qualify, disqualifies the others, it seems to me would manifestly be against the intention of the testator and the true spirit of his will, and defeat the very object he had in view in making the appointment. To remove all doubt upon the subject and secure the construction here contended for, seems to have been the object of the statute upon the subject both in England and this country.

It would in my judgment be a perversion of the true intention and meaning of the statute, and do violence to what I believe to have been for a long time the accepted interpretation of the law by the profession generally in our State, to hold otherwise. It is possible and I think quite probable, that were we to give the statute the construction claimed for it by counsel for the defendant, titles to large amounts of real estate, purchased in entire good faith, and now quietly enjoyed, might become unsettled, and all the evil consequences usually accompanying such action by the courts would follow.

It seems to me there is no sufficient reason for, nor does public policy require such a construction of the law, and it ought not to be given by this Court. The following authorities may be examined with profit in examining the question raised in this case: *Bonifaut v. Greenfield* 1 Cro. 80; *Dike*

*v. Ricks* 4 Cro. C. 335 ; 1 Sugd. Pow. (6th Lond. ed.) 143, 144 ; *Pitt v. Pelham* Ch. Cas. 178; 1 Lev. 304; *Wardwell v. McDonnell* 31 Ill. 364; *Clinefelter v. Ayers* 16 Ill. 332: s. c. 20 Ill. 463 ; *Conklin v. Egerton* 21 Wend. 430 ; *Roseboom v. Mosher* 2 Denio 61; *Wills v. Cowper* 2 Ham. 124 ; Powell, Devises, 196, 197; *Judson v. Gibbons* 5 Wend. 224.

I think the executor in this case had the power to make sale of the homestead property of the Rumney estate, and the contract made therefor, and that the indorsement and transfer of the note in question were not without consideration, and must be held valid.

It is unnecessary to consider the case further. This disposition of the main question raised, renders it necessary to reverse the judgment, and a new trial must be granted.

CAMPBELL and CHAMPLIN, JJ. concurred.

COOLEY, C. J. The question in this case arises under the statute which provides that "when all the executors appointed in any will shall not be authorized, according to the provisions of this chapter to act as such, such as are authorized shall have the same authority to perform every act, and discharge every trust required and allowed by the will, and their acts shall be as valid and effectual for every purpose, as if all were authorized, and should act together ; and administrators with the will annexed, shall have the same authority to perform every act, and discharge every trust, as the executors named in the will would have had, and their acts shall be as valid and effectual for every purpose." How. Stat. § 5844. Another statute provides that " when a power is vested in several persons, all must unite in its execution; but if, previous to such execution, one or more of such persons shall die, the power may be executed by the survivor or survivors." Id. § 5628.

In this case two executors were named in the will, one of whom declined to qualify, but is still living. The other qualified and acted. The question discussed in the case was whether it was competent for him alone to execute, not for purposes of administration and long after the time for the

settlement of the estate under the statute had expired, a power which by the will was conferred upon both. It is an interesting and important question, and was ably argued, but is not discussed in the opinion of Mr. Justice Sherwood, which treats the case as if the power had been executed as a step in administration. No one has ever doubted, so far as I know, that for administration purposes the acting executor might execute such a power, and no authority beyond the statute itself is needed in support of such an execution. Whether a case like the present is within the intent of the statute first recited is quite a different question, which I do not discuss, because the prevailing opinion in the case avoids any mention of it.