LOUIS SCHROEDER, TRUSTEE, APPELLEE, v. PERLIA ·J. WILCOX ET AL., APPELLANTS.

FILED FEBRUARY 6, 1894.   No. 5294.

1. **Administrator's Sale of Realty**: JUDGMENTS: COLLATERAL ATTACK. When an administrator's petition for authority to sell real property of the decedent for the payment of his debts was duly filed in the district court of the proper county and due notice of such application was published as prescribed by the order made upon the presentation of such application, the district court obtained · such jurisdiction of the subject-matter for the purposes of the application referred to, as that its judgment or order is not subject to attack or question in a collateral action.

2. ———: ———: ———: EVIDENCE OF PUBLICATION. Where the order of the court required publication of notice of an application to sell real property to be made in a newspaper designated by name, it was proper, as against a collateral attack upon the order finally made, to show by competent evidence, independently of the record, that the publication was in fact made in strict accordance with the requirements of the said order of the court.

3. **Wills**: POWER OF EXECUTOR TO SELL REAL ESTATE. Under a will, which required payment of the debts of the decedent and the distribution, in a manner designated, of the balance which should remain of the proceeds of the sale of certain described real estate of the testator, without any designation of the person by whom such sale was to be made, the executor had power to sell and make conveyance of the said real estate independently of any order of court authorizing or confirming such sale or deed.

4. **Sales of Realty by Administrator Where Executor Named in Will Fails to Qualify.** A sale and conveyance of real property which might properly have been made by an executor named in the will had he qualified, may be made by an administrator with the will annexed appointed upon the refusal of the party named as executor to qualify as such, where the proceeds of the sale of the real property are directed by the terms of the will to be used in making payment of the indebtedness of the testator, the balance remaining to be distributed equally among legatees clearly designated,—the will indicating no special confidence of the testator in the person therein named as executor.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

The opinion contains a statement of the case.

*Breckenridge, Breckenridge & Crofoot,* for appellants:

The word "heirs," as used in the will, was intended to mean, and does mean, children. (*Barton v. Tuttle,* 62 N. H., 558; *Moore v. Lewis,* 4 O. Circuit Court, 284; *Davis v. Davis,* 39 N. J. Eq., 14; *Jarvis v. Quigley,* 10 B. Mon. [Ky.], 106; *Haley v. Boston,* 108 Mass., 579; *Haverstick's Appeal,* 103 Pa. St., 394; *Hinton v. Milburn,* 23 W. Va., 166; *Beatty v. Trustees Cory Universalist Society,* 39 N. J. Eq., 463; *Bailey v. Patterson,* 3 Rich. Eq. [S. Car.], 156; *Williamson v. Williamson,* 18 B. Mon. [Ky.], 370; *Bowers v. Porter,* 4 Pick. [Mass.], 210; *King v. Beck,* 15 O., 559.)

The will does not convey the title to any of the land to the executor. The title could not rest in abeyance. It

must have vested at once upon the death of the testator in the children of J. K. Saunders and Perlia J. Wilcox. (*Nicoll v. Scott,* 99 Ill., 529; *Wilson v. White,* 109 N. Y., 59; Jarman, Wills, pp. 436, 407, 408, note; *Beadle v. Beadle,* 2 McCrary [U. S.], 586; *Herbert v. Smith,* 1 N. J. Eq., 141; *Scott v. Monell,* 1 Redfield [N. Y.], 431; *Romaine v. Hendrickson's Executors,* 24 N. J. Eq., 231; *Hampton v. Shotter,* 8 Adol. & E. [Eng.], 905.)

The will did not give the executor named therein power to sell real estate. To confer power to sell lands under a will, express and unequivocal words are necessary. (*Fell v. Young,* 63 Ill., 106; *Buckner v. Cromie,* 5 Bush [Ky.], 603; *Skinner v. Wood,* 76 N. Car., 109; *Bell's Appeal,* 66 Pa. St., 498; *Gay v. Grant,* 8 S. E. Rep. [N. Car.], 100; *Dill v. Wisner,* 88 N. Y., 154; *In re Fox's Will,* 52 N. Y., 537; *Owen v. Ellis,* 64 Mo., 77; *Hopkins v. Van Valkenburgh,* 16 Hun [N. Y.], 3.)

If the will had given the executor who failed to qualify power to sell real estate, the power would not devolve upon the administrator *cum testamento annexo.* (*Lockwood v. Sturdevant,* 6 Conn., 374; *Warnecke v. Lembca,* 71 Ill., 92; *Tippett v. Mize,* 30 Tex., 362; 2 Williams, Executors [6th Am. ed.], p. 1011; *Berger v. Duff,* 4 Johns. Ch. [N. Y.], 368*; *Naundorf v. Schumann,* 41 N. J. Eq., 14; *Gay v. Grant,* 8 S. E. Rep. [N. Car.], 100; *Wills v. Cowper,* 2 O., 124; *Hodgin v. Toler,* 70 Ia., 21; *Nicoll v. Scott,* 99 Ill., 529; *Dunning v. Ocean Nat. Bank of New York,* 61 N. Y., 497; *Brown v. Hobson,* 3 A. K. Marshall [Ky.], 380; *Vardeman v. Ross,* 36 Tex., 111; *Belcher v. Branch,* 11 R. I., 226; *M'Donald v. King,* 1 N. J. Law, 432; *Conklin v. Egerton's Administrator,* 21 Wend. [N. Y.], 430; *Knight v. Loomis,* 30 Me., 204; *Ross v. Barclay,* 18 Pa. St., 179; *Dominick v. Michael,* 4 Sandf. [N. Y.], 374; *Beekman v. Bonsor,* 23 N. Y., 303; *Hall v. Irwin,* 2 Gil. [Ill.], 176; *In re Besley's Estate,* 18 Wis., 477.)

The granting of license to an administrator to sell real

estate is a special proceeding only authorized by statute, which must be strictly followed. Such proceeding is unknown to the common law. If the statute were not strictly complied with, the proceedings were void. (*Bloom v. Burdick*, 1 Hill [N. Y.], 139; *Striker v. Kelly*, 7 Hill [N. Y.], 25; *Foster v. Glazener*, 27 Ala., 391; *Thatcher v. Powell*, 6 Wheat. [U. S.], 119; *Ludlow v. Johnson*, 3 O., 553; *Knox v. Jenks*, 7 Mass., 488; *Fell v. Young*, 63 Ill., 106; *Wright v. Edwards*, 10 Ore., 298; *Corwin v. Merritt*, 3 Barb. [N. Y.], 341.)

There are no presumptions in favor of the jurisdiction, even in courts of general jurisdiction, where they are acting under a special statute and not according to the course of the common law. (*Morse v. Presby*, 26 N. H., 302; *Carleton v. Washington Ins. Co.*, 35 N. H., 167; *Galpin v. Page*, 18 Wall. [U. S.], 350; *Edmiston v. Edmiston*, 2 O., 251; *Furgeson v. Jones*, 20 Pac. Rep. [Ore.], 843; *Donlin v. Hettinger*, 57 Ill., 348.)

Void judgments may be attacked either directly or collaterally, in any proceeding where any one is claiming anything under them. (*People v. Eggleston*, 13 How. Pr. [N. Y.], 123; *Camden v. Haymond*, 9 W. Va., 680; *Condry v. Cheshire*, 88 N. Car., 375; *Morris v. Hogle*, 37 Ill., 150; *Cain v. Goda*, 84 Ind., 209; *Morris v. Halbert*, 36 Tex., 19; *Martin v. Judd*, 60 Ill., 78; *Edwards v. Whited*, 29 La. Ann., 647; *Lyles v. Bolles*, 8 S. Car., 258; *Borden v. Fitch*, 15 Johns. [N. Y.], 141; *Morse v. Presby*, 26 N. H., 302; *Furgeson v. Jones*, 20 Pac. Rep. [Ore.], 843; *Mills v. Paynter*, 1 Neb., 446.)

The record in the license case shows affirmatively a want of jurisdiction. The record introduced in evidence by the plaintiff showed that the order to show cause was directed to be published in the *Nebraska Watchman*, and the recitals are that it was published in the *Omaha Republican*. If the want of jurisdiction appears affirmatively by the record, it s fatal to the proceedings. (*Blodgett v. Hitt*, 29 Wis., 169.)

In the application for license the heirs and devisees, and all persons interested, must have been served with notice of such application. The service of the order to show cause was jurisdictional, without which all the proceedings were void. (*Smith v. Meyers*, 5 Blackf. [Ind.], 223; *Overstreet v. Davis*, 24 Miss., 393; *North v. Moore*, 8 Kan., 143; *Tyler v. Peatt*, 30 Mich., 63; *In re Mahoney*, 34 Hun [N. Y.], 501; *Hamilton v. Lockhart*, 41 Miss., 460; *Gulley v. Macy*, 81 N. Car., 357; *Marshall v. Rose*, 86 Ill., 374; *Gibbs v. Shaw*, 17 Wis., 204; *White v. Jones*, 38 Ill., 159; *Windsor v. McVeigh*, 93 U. S., 274; *Johns v. Northcutt*, 49 Tex., 444; *Hale v. Finch*, 104 U. S., 261; *Morris v. Hogle*, 37 Ill., 150; *Guy v. Pierson*, 21 Ind., 18; *O'Dell v. Rogers*, 44 Wis., 136; *Wilson v. White*, 109 N. Y., 59; *Mickel v. Hicks*, 19 Kan., 578; *Fell v. Young*, 63 Ill., 106; *Donlin v. Hettinger*, 57 Ill., 348.)

*John W. Lytle*, also for appellants.

*Edward W. Simeral*, contra:

The power under the will is sufficient to authorize the executor to sell without first obtaining an order of the court. (*Little v. Giles*, 25 Neb., 331; *Peter v. Beverly*, 10 Pet. [U. S.], 532*; *M'Donald v. Hewett*, 15 Johns. [N. Y.], 349; *Lippincott v. Lippincott*, 19 N. J. Eq., 121; *Rankin v. Rankin*, 36 Ill., 293; *Gray v. Henderson*, 71 Pa. St., 368; *Lindley v. O'Reilly*, 50 N. J. Law, 636.)

The power in the will was ample to vest in the executor the right to sell by virtue of his office. It follows, as a necessary conclusion, that the administrator with the will annexed, under the statutes of this state, will have the same power. (Secs. 169, 173, 190, ch. 23, Comp. Stats.; *Drummond v. Jones*, 44 N. J. Eq., 53; *Vernor v. Coville*, 54 Mich., 281; *Davis v. Hoover*, 112 Ind., 423; *Mott v. Ackerman*, 92 N. Y., 539; *Greenland v. Waddell*, 116 N. Y., 234; *In re Christie*, 59 Hun [N. Y.], 153; *Evans v.*

*Chew,* 71 Pa. St., 47; *Peebles v. Watts,* 9 Dana [Ky.], 103; *Watson v. Martin,* 75 Ala., 506; *Sandifer v. Grantham,* 62 Miss., 412; *Joralemon v. Van Riper,* 44 N. J. Eq., 299; *Putnam v. Story,* 132 Mass., 205; *Saunders v. Saunders,* 12 S. E. Rep. [N. Car.], 909; *Drayton v. Grimke,* 1 Bailey Eq. [S. Car.], 392.)

The testimony established the fact that the license was published as ordered. The appellee proved that all the prerequisites of jurisdiction were strictly complied with. The district court acquired jurisdiction over the minor children in the license case. (*Stanley v. Noble,* 59 Ia., 666; *Mohr v. Manierre,* 101 U. S., 417; *Equitable Life Assurance Society of the United States v. Laird,* 24 N. J. Eq., 319; *Britton v. Larson,* 23 Neb., 806.)

Proceedings for sale of realty by administrators are actions *in rem,* and every presumption is in favor of the correctness and regularity of judgments of courts of general jurisdiction acting within the powers prescribed by statute. Such judgments are not open to collateral attack. (*Grignon's Lessee v. Astor,* 2 How. [U. S.], 319; *McClay v. Foxworthy,* 18 Neb., 295; *Stack v. Royce,* 34 Neb., 833; *Seward v. Didier,* 16 Neb., 64; *Saxon v. Cain,* 19 Neb., 488; *Miller v. Sullivan,* 4 Dillon [U. S.], 341; *McNitt v. Turner,* 16 Wall. [U. S.], 352; *Bunce v. Bunce,* 59 Ia., 533.)

RYAN, C.

Prior to October 19, 1882, Platt Saunders was the owner of a tract of land south of and near the city of Omaha, known as the "Platt Saunders ten-acre tract." About the 13th of October, 1882, the said Platt Saunders executed a will, and on October 19, 1882, died, leaving no widow and leaving as his only children one son, John K. Saunders, and one daughter, Mrs. Perlia J. Wilcox, both of whom were then married and each had living children, which fact was known to said Platt Saunders when he made

his said will. The following is a copy of the will in question.

"I, Platt Saunders, of Douglas precinct, Douglas county, state of Nebraska, market gardener, make this my last will. I give and devise all my real estate as follows, that is to say : Commencing on the north side at the middle of the Bellevue road of the Platt Saunders ten-acre tract homestead, as recorded in the county treasurer's book of Douglas county, Nebraska, and running due south fifteen rods along the middle of said road; thence in a southwesterly direction twenty rods; thence north, parallel with the Bellevue road, fifteen rods; thence east along the north line of the said Platt Saunders ten-acre homestead to the place of beginning. And this shall be my last will and wish that my son, John K. Saunders, shall have and hold the above described land, together with all the appurtenances and improvements thereon, so long as he shall live, and at his death the said property shall be sold to the best advantage and the proceeds equally divided among his heirs.

"Furthermore, commencing fifteen rods from the north line at the middle of the Bellevue road on the Platt Saunders ten-acre homestead as recorded in the county treasurer's book for Douglas county, Nebraska, and running due south fifteen rods; thence in a southwesterly course ten rods; thence north, parallel with the Bellevue road, fifteen rods; thence east to the place of beginning. And this shall be my last will and wish that my daughter, Perlia J. Wilcox, shall have and hold the above described land, together with all the appurtenances and improvements thereon, so long as she shall live, and at her death the said property shall be sold to the best advantage and the proceeds be divided equally among her heirs.

"And, furthermore, all the residue of the said ten acres shall be sold to the best advantage, and after paying all the lawful debts of the said Platt Saunders, the remaining proceeds shall be divided between the heirs of the said John K. Saunders and Perlia J. Wilcox.

"And, furthermore, I hereby appoint and empower T. J. Torrey, of Valley precinct, Douglas county, Nebraska, to be my executor without bonds, and trust that this my last will shall faithfully and impartially be executed, and that all lands and money shall be given to their legal owners, and all money to be paid over as fast as received by said executor.

" In witness whereof, I have hereunto signed and sealed this instrument, and publish the same, as and for my last will, at Valley precinct, Douglas county, state of Nebraska, this 13th day of October, 1882.

(Duly witnessed.)                    "PLATT SAUNDERS."

T. J. Torrey, who was named as executor, refused to qualify in accordance with the terms of the will. Afterwards E. V. Smith was appointed administrator with the will annexed, and took upon himself the discharge of the duties imposed by the will. There were sufficient claims filed and allowed as valid debts against the estate of Platt Saunders to more than require in payment all of his personal property. Thereupon the said E. V. Smith, administrator with the will annexed, undertook to, and in so far as he had the power did, sell on July 17, 1883, to John A. McShane that portion of the ten-acre tract designated as "all of the residue." Throughout the presentation of this case the two tracts described in the will by metes and bounds are treated together as constituting the four-acre tract, " the residue," as it is called in the will, of course constituting the six-acre tract, by which distinctions frequent reference will hereinafter be made to the tracts designated. The sale of this latter (the six-acre tract) did not afford means sufficient, together with the personal property, to pay the debts of the decedent. Thereupon, E. V. Smith, the administrator, applied to the district court of Douglas county, Nebraska, for license to sell the remaining four acres for the purpose of paying the balance of said debts. This license was granted and the four acres were sold Oc-

tober 17, 1885, for a considerable sum more than sufficient
to pay all the remaining debts and expenses of administration.   John A. McShane was also the purchaser of this
tract.   The plaintiff in this action obtained title as trustee
through McShane, and on October 16, 1889, commenced
proceedings to quiet title against the defendant.   December
5, 1890, John K. Saunders filed in the district court of
Douglas county, Nebraska, his petition against Louis
Schroeder, who was known as the plaintiff herein, and a
large number of other defendants supposed to be making
some claim to the property through or under McShane or
this plaintiff, the said Saunders by his petition claiming an
interest in said property, and asking the court to set aside
and cancel the said administrator's deeds, etc.   This last
action was by order of the court on February 21, 1891,
consolidated with the cause now under consideration, and
was ordered to be tried with it.   At the February term,
1891, of the district court of Douglas county a trial was
had, and in November, 1891, a decree was rendered in
favor of the plaintiff quieting his title, from which the defendants prosecute their appeal to this court.

The appellants claim that said sales by E. V. Smith,
administrator, were without authority, and were, therefore,
null and void, and that the defendants have an interest in
said property unaffected by the sales referred to.   The
amount realized upon each of these sales is tendered in
court, with the interest thereon accrued up to the time of
the commencement of this suit.   The appellants very
strenuously insist that the word "heirs," as used in the
will of Platt Saunders, should be treated as synonymous
with the word "children."   This contention is supplemented with the further claim that the will by its terms
having provided that as to the four-acre tract a life estate
should exist in favor of the parties named, and furthermore, that the six-acre tract being simply charged with the
payment of debts, and that the proceeds of the residue be-

ing required to be distributed between the heirs, or rather, as the appellants contend, children, of J. K. Saunders and Perlia J. Wilcox, thereupon, subject to the charges named, the title in fee-simple vested in the children aforesaid.  This argument derives its countenance from the construction urged that intermediate the death of Platt Saunders and the death of Perlia J. Wilcox and J. K. Saunders, the children of the parties last named must be vested with the title, for, it is insisted, the title cannot remain in abeyance.  It is quite possible that the provisions of our statute may have some bearing upon this question of the title remaining in abeyance.  Under chapter 23, Compiled Statutes, by virtue of section 280, the executor or administrator is held accountable for the income of real estate while it remains in his possession.  Sections 289, 290, 291, and 292 of the same chapter prescribe the procedure and decree necessary in making distribution of real property.  In *Doe v. Flanagan*, 1 Ga., 540 and 541, Judge Nesbitt, for that court, employed language which seems applicable to our statute in connection with the title to real property not remaining in abeyance after the death of its owner.  The importance of the consideration whether or not it remains in abeyance, however, seems to us to have been rather overestimated by the appellants, for the cases which will hereinafter be cited seem to have been decided without reference to whether the title had vested or was in abeyance.

1.  After the sale of the six-acre tract there still remained unpaid quite a balance due the creditors of the estate of Platt Saunders, whereupon application was made by the administrator to the district court of Douglas county for authority to sell the four-acre tract.  The petition for this sale was in due form and the required notice thereof was duly published in the *Nebraska Watchman*, the paper designated as that in which publication was to be made.  In the order confirming the sale it was recited that publication

had been made in the *Omaha Republican*. There was, however, competent independent evidence submitted on the trial of this case showing that in fact publication was made as required, both as to time and the newspaper designated, and we think this showing was properly considered. (*Britton v. Larson*, 23 Neb., 806.) Proceedings for the sale of real property by an administrator or executor are necessarily *in rem*. (*McClay v. Foxworthy*, 18 Neb., 295.) The jurisdiction having once vested no collateral attack can be tolerated in independent cases on account of mere irregularities alleged to have occurred in the proceedings leading up to or ending in the administrator's sale. No ground of objection is presented which does not fall within the designation just used, except as will be noticed in the further consideration in connection with another branch of this case.

2. As has already been noted, the six-acre tract was sold for the payment of debts against the estate of the said Platt Saunders which the personal property was insufficient to satisfy. The sale of this tract was made by the administrator *cum testamento annexo*, under the authority which the appellee claims existed under the following language of the will: "All the residue of the said ten acres shall be sold to the best advantage, and after paying all the lawful debts of the said Platt Saunders, the remaining proceeds shall be divided between the heirs of the said John K. Saunders and the said Perlia J. Wilcox. And furthermore, I hereby appoint and empower T. J. Torrey, of Valley precinct, Douglas county, Nebraska, to be my executor without bonds, and trust that this my last will shall be faithfully and impartially executed, and that the lands and moneys shall be given to their legal owners, and all moneys paid as fast as received by said executor." It is argued by the appellee that when a testator directs in his will that his estate shall be disposed of for certain purposes without declaring by whom the necessary sale shall be made, the

executor may make the sale if the proceeds thereof are distributable by him. The language in the closing part of the quotation just made indicates that distribution was to be made by the executor; indeed, the same result would have followed in the absence of the express provision just referred to. In resistance of this contention the appellants cite several authorities, a few of which seem in point, though most of them fall short of sustaining the proposition in support of which they are cited. The correct rule is believed to be to sustain the power of an executor to sell under the circumstances indicated. The ·unqualified and unhesitating manner in which the rule is stated and applied by courts and text writers of acknowledged weight, inspires confidence in their deductions independently of their number, which is not inconsiderable.

In *Peter v. Beverly*, 10 Pet., 532, the supreme court of the United States adopted the following language: "It is a well settled rule in chancery, in the construction of wills as well as other instruments, that when land is directed to be sold and turned into money, or money is directed to be employed in the purchase of land, courts of equity in dealing with the subject will consider it that species of property into which it is directed to be converted. This is the doctrine of this court in the case of *Craig v. Leslie*, 3 Wheat. [U. S.], 577*; and is founded upon the principle that courts of equity, regarding the substance and not the mere form of contracts and other instruments, consider things directed or agreed to be done as having been actually performed. * * * In the American cases there seems to be less confusion and nicety on this point, and the courts have generally applied to the construction of such powers the great and leading principle which applies to the construction of other parts of the will,—to ascertain and carry into execution the intention of the testator. When the power is given to executors to be executed in their official capacity of executors, and there are no words in the will warrant-

ing the conclusion that the testator intended for safety, or some other object, a joint execution of the power, as the office survives, the power ought also to be construed · as surviving. And courts of equity will lend their aid to uphold the power, for the purpose of carrying into execution the intention of the testator, and preventing the consequences that might result from an extinction of the power; and where there is a trust charged upon the executors, in the direction given to them in the disposition of the proceeds, it is the settled doctrine of courts of chancery that the trust does not become extinct by the death of one of the trustees. * * * This is the doctrine of Chancellor Kent in the case of *Franklin v. Osgood,* 2 Johns. Ch. [N. Y.], 19, and cases there cited, and is in accordance with the numerous decisions in the English courts (3 Atk. [Eng.], 714; P. Wms. [Eng.], 102), and is adopted and sanctioned by the court of errors in New York, on appeal, in the case of *Franklin v. Osgood.* And Mr. Justice Platt in that case refers to a class of cases in the English courts where it is held that, although from the terms made use of in creating the power, detached from other parts of the will it might be considered a mere naked power to sell; yet if, from its connection with other provisions in the will, it clearly appears to have been the intention of the testator that the land should be sold to execute the trusts in the will, and such sale is necessary for the purpose of executing such trusts, it will be construed as creating a power coupled with an interest, and will survive. This doctrine is fully recognized by the supreme court of Pennsylvania in the case of the *Lessee of Zebach v. Smith,* 3 Binn., 69. * * * The land is to be sold for the purpose of paying the debts, which is a duty devolving upon the executors; and it follows as a matter of course that the testator intended his executors should make the sale, to enable them to discharge the duty and trust of paying the debts. Mr. Sugden, in his treatise on Powers, page 167,

on the authority of a case cited from the Year-Books, lays it down as a general rule that when a testator directs his land to be sold for certain purposes, without declaring by whom the sale shall be made, if the fund is to be distributed by the executors, they shall have by implication the power to sell."

Again, in the case of *Lippincott v. Lippincott*, 19 N. J. Eq., 121, the court made use of the following language: " The appointment of one as executor of a will that directs lands to be sold, does not of itself confer on him the power to sell. (*Patton v. Randall*, 1 Jac. & W., 189.)   But if the executor is directed by the will or bound by law to see to the application of the proceeds of the sale, or if the proceeds, in the disposition of them, are mixed up and blended with the personalty, which it is the duty of the executor to dispose of and pay over, then a power of sale is conferred on the executor by implication."

In *Rankin v. Rankin*, 36 Ill., 293, occurs the following language : "No question can be, nor indeed is, made as to the intent of the testator that the land should be sold; but it is urged that the executors had no power to make the sale.    It sometimes happens, says Williams on Executors, page 413, 'that a testator directs his estate to be disposed of for certain purposes without declaring by whom the sale shall be made.    In the absence of such a declaration, if the proceeds be distributable by the executor, he shall have the power by implication.    Thus a power in a will to sell or mortgage without naming a donee will, unless a contrary intention appear, vest in the executor, if the fund is to be distributable by him, either for the payment of debts or legacies.'   This principle is well settled and is not controverted by the counsel for the defendant in error, but it is contended that the proceeds of this sale were not distributable by the executor.   The same learned author whom we have already quoted, on page 414, uses the following language: ' It is an established doctrine in courts of equity

that things shall be considered as actually done which ought to have been done, and it is with reference to this principle that land is under some circumstances regarded as money and money as land.' It is laid down by Sir Thomas Sewell, in *Fletcher v. Ashburner*, 1 Bro. C. C. [Eng.], 497, 'that nothing was better established than this principle that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted.' It follows, therefore, that every person claiming property under an instrument directing its conversion must take it in the character which that instrument has impressed upon it, and its subsequent devolution and disposition will be governed by the rules applicable to that species of property. This principle is familiar law and has been recognized to the fullest extent by this court in *Baker v. Copenbarger*, 15 Ill., 103, and *January v. Smith*, 29 Ill., 116. This principle is decisive of this case. The land was directed to be sold and its proceeds divided among certain persons named in the will. It was then to be considered as a bequest of money. In the language above quoted, and the accuracy of which was approved in *Wheldale v. Partridge*, 5 Ves. [Eng.], 396, it is to be considered as that species of property into which it was directed to be converted. It is then a fund distributable by the executors to the devisees and as such passes through their hands by virtue of their office. This gave them the power to sell, according to the principle stated above in Williams on Executors."

The same propositions are sustained by the cases of *Gray v. Henderson*, 71 Pa. St., 368, and *Lindley v. O'Reilly*, 50 N. J. Law, 636. Indirectly the same propositions are countenanced in *Little v. Giles*, 25 Neb., 331. The latest decision upon this subject is that of *Hite v. Hite*, 1 Am. Law Register and Review [Ky.], n. s., No. 1, p. 49, the same result being reached as attained upon the cases already cited.

We conclude, therefore, that the will authorized the ex-ecutor to sell the four-acre tract, charged as he was with the duty of distributing the proceeds of the sale by the will, which failed to designate by whom the necessary sale should be conducted.

3. The executor, however, having refused to qualify, the next question is as to whether or not the duty of selling could be performed by the administrator *cum testamento annexo*. The appellants insist that the power to sell rests upon the special confidence of the testator in the executor named, and that the power delegated to the executor can-not in turn be delegated by him. We do not understand that the powers of an administrator *cum testamento annexo* are powers delegated by the executor. They are such as are conferred by statute alone, the provisions of which, in this state, are found in chapter 23, Compiled Statutes, from which we quote the sections designated:

"Sec. 169. Every person who shall be appointed admin-istrator with the will annexed shall, before entering upon the execution of his trust, give bond to the judge of pro-bate in the same manner and with the same condition as is required of the executor, and shall proceed in all things to execute the trust in the same manner as an executor would be required to do."

"Sec. 173. When an executor appointed in any will shall not be authorized, according to the provisions of this subdivision, to act as such, such as are authorized shall have the same authority to perform every act and discharge every trust required and allowed by the will, and their acts shall be as valid and effectual for every purpose as if all were authorized, and should act together; and administra-tors with the will annexed shall have the same authority to perform every act and discharge every trust as the executor named in the will would have had, and their acts shall be as valid and effectual for any purpose."

"Sec. 190. An administrator appointed in the place of

any former executor or administrator, for the purpose of administering the estate not already administered, shall have the same powers, and shall proceed in settling the estate in the same manner as the former executor or administrator should have had or done, and may prosecute or defend any action commenced by or against the former executor or administrator, and may have execution on any judgment recovered in the name of such former executor or administrator."

In almost every case cited by the appellants for the purpose of showing that the administrator *cum testamento annexo* did not succeed to the rights of the executor named in the will, it will be found that there was some special confidence reposed by the testator in the executor named. This distinction is stated in 2 Williams, Executors [6th Am. ed.], p. 1011, cited by appellants. The same idea is shown to have had weight in *Naundorf v. Schuman*, 41 N. J. Eq., 14. In *Belcher v. Branch*, 11 R. I., 226, the will required the money to be loaned and the income applied to certain designated purposes, a duty more proper to be devolved upon a guardian than executor. In *M'Donald v. King*, 1 N. J. Law, 432, the bequest to be looked after was the rents, profits, and dividends of the income of real estate of the decedent. We are not to be understood as asserting that all cases cited by the appellants are qualified in the manner or measure stated, but that most of them are thus qualified. In other cases there are involved statutes so dissimilar to our own that the opinions are of little practical value as applied to our statute. Space forbids a detailed analysis of the cases referred to by appellants. The rule established upon the authorities is well stated in the cases from which copious extracts will now be made.

In the case of *Drummond, Adm'r, v. Jones*, 44 N. J. Eq., 53, we find the following language: "Where a power of sale is given to a particular person by words indicating personal confidence or special reliance on the judgment of

that particular person, as that the power shall not be exercised except the donee decides that its exercise is necessary or proper there, it being manifest from the words of the grant that the creator of the power meant to leave the question whether the power should be exercised or not wholly dependent on the judgment of the donee, no one in such a case can exercise it but the donee. (*Chambers v. Tulane*, 1 Stock. [N. J.], 146; *Naundorf v. Schuman*, 41 N. J. Eq., 14.) But where the power is annexed to the office of the executor, and it is created to enable an executor to perform the duties imposed on him by the will, there, although created by words giving the executor a right to exercise a discretion as to the time or the method of sale, the power will be considered impersonal and as a thing incident to the office which may be used by any person who may be charged with the duties of the office. In such cases, said Chief Justice Beasley, in *Weimar v. Fath*, 14 Vr. [N. J.], 1, 'the power is annexed to the office and not to the specified donee of the power.' The chief justice also said, in substance, in the same case, when, instead of there being an express designation of individuals, there is a designation, as recipients of the authority of a class of officers, there it will be understood that the power is intended to be lodged not in any particular individual, but in all persons who may at any time fill such office."

This subject is discussed in *Vernon v. Covell*, 54 Mich., 281, in the construction of a statute of which section 173, hereinbefore quoted, is an exact copy. In the case just cited, Judge Sherwood used the following language: "It is claimed by plaintiff's counsel that the provision of our statute, if the power did not exist at common law, gives full authority to the one executor in this case to make valid sale of the real estate of the deceased, and authorized him to make the contract in question (a contract to sell and convey real estate). I think this provision clearly authorizes the executor in this case to sell the real estate of the

deceased mentioned in the will, and to make the contract for the sale thereof, to secure the performance of which the deposit of the note in question and its indorsement were made. Not only is the sale authorized, but the designation of the person and his power to make it are derived solely from the will. The probate of the will and letters testamentary furnish no more than the evidence of the existence of these things, and not the authority for doing them. I think it may well be doubted whether the provisions of our statute, or that of 21 Hen. 8th, c. 4, so far as it relates to executors, is anything more then confirmatory of the common law upon this subject. (*Bonifaut v. Greenfield*, 1 Cro. [Eng.], 80; Co. Litt., 113*a*.)  *  *  *  It would in my judgment be a perversion of the true intention and meaning of the statute, and do violence to what I believe to have been for a long time the accepted interpretation of the law by the profession generally in our state, to hold otherwise. It is possible, and I think quite probable, that were we to give the statute the construction claimed for it by counsel for the defendant, titles to large amounts of real estate, purchased in entire good faith, and now quietly enjoyed, might become unsettled, and all the evil consequences usually accompanying such action by the court would follow. I think the executor in this case had the power to make the sale of the homestead property of the Rumney estate, and the contract made therefor, and that the indorsement and transfer of the note in question were not without consideration, and must be held valid."

The provision of the will under consideration in *Davis v. Hoover*, 112 Ind., 423, was as follows: "It is also my will that the above described real estate be appraised and sold at private sale,  *  *  *  and the interest, after deducting necessary expenses, given to my wife as her own property in accordance with item No. 1 of this will." The testator named no executor. Afterwards, one Free was appointed administrator with the will annexed, and sold at private

sale, and without an order of the court, real estate in ques-
tion to one Miller.    Hoover, the appellee, purchased this
land from a remote grantee of Miller.    In considering this
case the court said: "It is insisted that the propriety of
selling the real estate described in the will rested with, or
rather in, the discretion of the common pleas court of
Madison county, and not with Free, and hence, the sale
to Miller without an order of that court was void; that,
conceding that an order of court was not necessary, the
sale ought to have been held void, because it was not af-
firmatively shown that the real estate was first appraised
as required by the will.    It was held in the case of *Land-
ers v. Stone*, 45 Ind., 404, that the only practical difference
between an executor and an administrator with the will
annexed consists in the mode of their respective appoint-
ments, the first being named by the testator, and the latter
by the court in which the will is proved.    That is un-
doubtedly a correct statement of law as applicable to
the duties ordinarily imposed upon an executor by the
will.    There may be an exception to this general rule
where a personal and peculiar trust and confidence is re-
posed in the executor. (Williams, Executors [7th ed.],
461, and notes; *Farwell v. Jacobs*, 4 Mass., 634; 2 Rev.
St., 1876, p. 530, par. 93; Rev. St., 1881, par. 2361.)
The case before us falls within that general rule, and Free
took all the power under the will which would have de-
volved upon an executor if one had been named."

In *Mott v. Ackerman*, 92 N. Y., 539, the court made
use of the following language: "But we are of the opinion
that the administrator with the will annexed has au-
thority to make the necessary deed.    The question has
been left by the disagreement of the courts in some uncer-
tainty, which should be dispelled, so far as it is possible
to do so.    The statute provides that administrators with
the will annexed 'shall have the same rights and powers
and be subjected to the same duties as if they had been

named executors in such will.' (2 R. S., 72, par. 22.) In construing this statute great differences of opinion have arisen. (*De Peyster v. Clendining*, 8 Paige Ch. [N. Y.], 296; *Conklin v. Egerton*, 21 Wend. [N. Y.], 430, 25 Wend. [N. Y.], 224; *Roome v. Philips*, 27 N. Y., 357; *Bain v. Matteson*, 54 N. Y., 663; *Bingham v. Jones*, 25 Hun [N. Y.], 6.) The debate has turned mainly upon the inquiry, what were the distinctive duties of an executor as such, and when they were to be regarded as not appertaining to his office, but as personal to the trustee? Where the will gives a power to the donee in a capacity distinctly different from his duties as executor, so that as to such duties he is to be regarded wholly as trustee and not at all as executor, and where the power granted or the duty involved imply a personal confidence reposed in the individual over and above and beyond that which is ordinarily implied by the selection of an executor, there is no room for doubt or dispute. In such case the power and duty are not those of executors *virtute officii*, and do not pass to the administrator with the will annexed. But outside of such cases the instances are numerous in which, by the operation of a power in trust, authority over the real estate is given to an executor as such, and the better to enable him to perform the requirements of the will. It will not do to say in the present state of the law that whenever a trust or trust power is conferred upon executors relating to real estate, some personal confidence distinct from that reposed in executors is implied. An executor is always a trustee of the personal estate for those interested under the will. We have recently so decided where the trust character could only be derived from the office and its relations to rights claimed through it. (*Wager v. Wager*, 89 N. Y., 161.) And we have held also that where a will devised and bequeathed to the executor the residue of real and personal estate, in trust, to sell and convert the same, to divide the balance into shares, to invest it in bond and mortgage and to pay

over the income for a time, and finally the principal, the proceeds of the land sold became legal assets in the hands of the executor for which he was liable officially, and for which his sureties were responsible, and that an objection that he held the proceeds as trustee and not as executor, and could only be made accountable in equity, was not well taken. (*Hood v. Hood*, 85 N. Y., 571.)   We have no doubt, therefore, that where a power of sale is given to executors for the purpose of paying debts and legacies, or either, and especially where there is an equitable conversion of land into money for the purpose of such payment, and for distribution, and the power of sale is imperative and does not grow out of a personal discretion confided to the individual, such power belongs to the office of executor, and under the statute passes to and may be exercised by the administrator with the will annexed.   That is the case before us, and the deed of the administrator with the will annexed will be as effectual as would have been that of the executor if he had survived."

The quotations which we have made on this branch of the case clearly express our views upon the subject considered, and fully embrace all the questions remaining for consideration.   It follows from these views that the judgment of the district court is

AFFIRMED.

IRVINE, C., took no part in the decision.